[Nos. 599-3; 607-3.    Division Three.    December 6, 1972.]

EL COBA COMPANY DORMITORIES, INC., *Appellant*, v. FRANKLIN COUNTY PUBLIC UTILITY DISTRICT *et al.*, *Respondents*.

*D. Wayne Campbell* (of *Campbell & Johnston*), for appellant.

*John G. Schultz* (of *Leavy, Taber, Schultz & Bergdahl*), for respondent Franklin County Public Utility District.

*David E. Williams* (of *Critchlow, Williams, Ryals & Schuster*), for respondent International Brotherhood of Electrical Workers, Local No. 77.

MUNSON, C.J.—Plaintiff appeals from an order granting defendant Franklin County Public Utility District's (PUD) motion for summary judgment and granting defendant International Brotherhood of Electrical Workers, Local No. 77's (IBEW) motion to dismiss.

In the summer of 1968, plaintiff commenced construction of a dormitory in Pasco, Washington. Temporary electrical service for the dormitory was provided by the PUD in late July 1968. On October 29, 1968, plaintiff requested permanent electrical service. The PUD issued a work order to its employees to install this permanent service.

At this time plaintiff was being picketed by organized building trade unions because of their use of nonunion labor on this project. This dispute was known to all the parties herein. Although IBEW was not involved in the dispute, its employees refused to cross the picket line and, as a consequence, refused to install permanent service to the construction project. Whether the business agent of IBEW told its members not to cross the picket line is disputed.

Plaintiff instituted action against the PUD and IBEW, alleging the PUD had breached its contract to provide permanent electrical service within a reasonable time, and

alleging IBEW had tortiously interfered with the contract between plaintiff and the PUD. The PUD answered, denying the breach and affirmatively pled plaintiff had not filed a proper claim against it (RCW 54.16.110). The PUD also cross claimed against IBEW seeking indemnity alleging the union was responsible for any damage plaintiff might recover against the PUD.

IBEW did not answer the complaint, but moved to dismiss plaintiff's claim alleging plaintiff's remedy against IBEW was exclusively vested with the National Labor Relations Board. The PUD moved for summary judgment based on its affirmative defense. The trial court granted both motions; plaintiff appeals.

██ First, we must determine whether plaintiff was required to file a claim with the PUD prior to instituting this action. We conclude no such claim need be filed where the underlying basis is breach of contract.

RCW 54.16.110 provides:

> A district may sue in any court of competent jurisdiction, and may be sued in the county in which it is located. No suit for damages shall be maintained against a district except on a claim filed with the commission complying in all respects with the terms and requirements for claims for damages filed against cities of the second class.

Laws of 1955, ch. 390, § 12.

In 1957 the legislature passed the following statutes:

> 53.52.010 "District" defined. As used in RCW 53.52.020 the term "district" includes all municipal corporations having a governing body, such as port, school, independent highway, water, fire protection, sewer, *public utility*, and all other districts of similar organization but does not include any city, town, county, or township.
>
> 53.52.020 Claims for damages against districts. All claims for damages against any district as defined in RCW 53.52.010 must be presented to the governing body of such district and filed with the clerk or proper officer thereof within one year from the date the damage occurred or the injury was sustained or such claim shall be disallowed.

(Italics ours.) Laws of 1957, ch. 224, §§ 10 and 11.[1] Nothing in the 1957 enactment specifically repealed or amended RCW 54.16.110. That portion of RCW 54.16.110, however, relating to filing of claims against public utility districts must be deemed to have been impliedly repealed by the 1957 enactment. In *In re Chi-Dooh Li,* 79 Wn.2d 561, 563, 488 P.2d 259 (1971), the court stated:

> In a long line of cases we have held that a statute is impliedly repealed by a later legislative enactment if certain conditions are present in the later enactment. The conditions are (1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject; or (2) the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given effect by a fair and reasonable construction.

Cf. *State v. Adams,* 76 Wn.2d 650, 675, 458 P.2d 558 (1969); *Copeland Lumber Co. v. Wilkins,* 75 Wn.2d 940, 454 P.2d 821 (1969); *State Bd. Against Discrimination v. Board of Directors,* 68 Wn.2d 262, 273, 412 P.2d 769 (1966) and cases cited therein. We find, without considering the first rule above, that the second rule applies; namely, that RCW 54.16.110 and RCW 53.52.010-.020 are clearly inconsistent with, and repugnant to, each other.

RCW 54.16.110 requires the procedure for filing claims against a PUD shall be the same as that specified for second-class cities. That procedure is set forth in RCW 35.23.340 and RCW 35.31.040. Subsequently, RCW 53.52 was enacted, specifically including public utility districts. This legislation further specified the time limit within which a claim may be filed and the person with whom a claim should be filed. The time for such filing was extended from

---

[1] In *Bartelson v. Puyallup School Dist.,* 77 Wn.2d 412, 462 P.2d 912 (1969) and *Stuart v. East Valley Consol. School Dist. 361,* 61 Wn.2d 571, 379 P.2d 369 (1963), the provisions of RCW 53.52 were held to be mandatory and required a claim be filed with the "district" as therein provided. Likewise, in *Puget Constr. Co. v. Pierce County,* 64 Wn.2d 453, 392 P.2d 227 (1964), the court held the word "damages" applies whether the claim was based on contract or tort.

90 days, established for second-class cities, to a 1-year limitation for those "districts" which are specifically enumerated in RCW 53.52.010. By so doing, the legislature impliedly repealed that portion of RCW 54.16.110, which provided the procedure for filing claims against the PUD.

The matter did not end there. By Laws of 1967, ch. 164, § 16, the legislature specifically repealed RCW 53.52.010 and .020. Section 1 thereof specifically states the legislative intent to waive governmental immunity for tort claims against any state government agency or its subdivisions. Section 4 thereof sets forth the provision for the presentment and filing of claims against governmental entities. These sections have been codified in RCW 4.96.010 and .020.[2]

---

[2]"4.96.010 Tortious conduct of political subdivisions, municipal corporations and quasi municipal corporations—Liability for damages. All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: *Provided,* That the filing within the time allowed by law of any claim required shall be a condition precedent to the maintaining of any action. The laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory."

"4.96.020 Claims—Presentment and filing—Contents. (1) Chapter 35.31 RCW shall apply to claims against cities and towns, and chapter 36.45 RCW shall apply to claims against counties.

"(2) The provisions of this subsection shall not apply to claims against cities and towns or counties but shall apply to claims against all other political subdivisions, municipal corporations, and quasi municipal corporations. Claims against such entities for damages arising out of tortious conduct shall be presented to and filed with the governing body thereof within one hundred twenty days from the date that the claim arose. All such claims shall be verified and shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose. If the claimant is incapacitated from verifying, presenting, and filing his claim in the time prescribed or if the claimant is a minor, or is a nonresident of the state absent

The legislature is presumed to be cognizant of the judicial interpretation of statutes. *Graffell v. Honeysuckle,* 30 Wn.2d 390, 191 P.2d 858 (1948). In 1967, when the legislature passed chapter 164, it is presumed to have known that the Supreme Court had interpreted the word "damages" as used in prior claim statutes to include claims based upon tort and contract. *Puget Constr. Co. v. Pierce County,* 64 Wn.2d 453, 392 P.2d 227 (1964).

In *Graffell v. Honeysuckle, supra* at 399, the court stated:

> In construing statutes which re-enact, with certain changes, or repeal other statutes, or which contain revisions or codification of earlier laws, resort to repealed and superseded statutes may be had, and is of great importance in ascertaining the intention of the legislature, for, where a material change is made in the wording of a statute, a change in legislative purpose must be presumed.

The legislative enactment of 1967, *supra,* requiring the filing of claims against various political subdivisions, arising from tortious conduct only, constituted a material change from previous claim statutes. This leads us to conclude that the legislature intended to eliminate the necessity for filing claims which have as their basis anything other than tortious conduct.[3] Consequently, plaintiff's claim

---

therefrom during the time within which his claim is required to be filed, the claim may be verified, presented, and filed on behalf of the claimant by any relative, attorney, or agent representing him. No action shall be commenced against any such entity for damages arising out of tortious conduct until a claim has first been presented to and filed with the governing body thereof. The requirements of this subsection shall not affect the applicable period of limitations within which an action must be commenced, but such period shall begin and shall continue to run as if no claim were required."

[3]We do not determine if the enactment of RCW 4.96.010 and .020 impliedly repealed RCW 54.16.110, in light of our finding that RCW 54.16.110 was impliedly repealed by RCW 53.52.020. We note, however, that under common-law rules of interpretation,

> the repeal of a repealing statute operates to revive the original enactment where the repeal of the repealing statute is accomplished by express provision without additional legislation upon the subject matter. However, where the repeal of the repealing statute is achieved by specific provision or by implication with new additional

against the PUD, being based upon a contract, was not required to be filed with the PUD prior to commencement of the action in the superior court.

Lastly, plaintiff contends the trial court erred in granting IBEW's motion to dismiss. We agree.

In *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959) the court held the National Labor Relations Act preempts the jurisdiction of state and federal courts to regulate conduct "arguably subject to section 7 or 8 of the act." This holding was reaffirmed, with an intent to clarify the preemption principle, in *Amalgamated Ass'n of Street Employees v. Lockridge,* 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909 (1971). However, both *Garmon* and *Lockridge* emphasize that the exercise of judicial power over conduct arguably protected or prohibited by the NLRA is permitted where Congress has affirmatively indicated that such power should exist. 29 U.S.C.A. § 187, at 249 states as follows:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of

legislation on the subject matter, the original legislation is revived only to the extent to which it is consistent with the new legislation. (Footnotes omitted.) 1 Sutherland, *Statutory Construction* § 2039, at 519 (3d ed. 1943); *see also* 82 C.J.S. *Statutes* § 307(a), at 523 (1953); 50 Am. Jur. *Statutes* § 579, at 574 (1944).

Applying this principle here would require a holding that the repeal of RCW 53.52.020, which we find impliedly repealed RCW 54.16.110, would revive RCW 54.16.110. We refuse to apply this principle of revival. Such an application in this complicated modern age would place too great a burden upon the legislature to search out all old laws and trace all subsequent legislation in relation thereto in order to be assured that no antiquated law was being inadvertently revived. There is some evidence that the Washington Supreme Court itself, as early as 1921, has refused to recognize this revival rule and we in turn refuse to do so. *See In re Williamson,* 116 Wash. 560, 565, 200 P. 329 (1921).

section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

(Footnote omitted.) This section allows commencement of a suit for damages for alleged violation of section 158(b)(4) prior to a NLRB unfair labor practice ruling on the matter and allows the suit to be filed in either federal or state courts. *Local 20, Teamsters v. Morton,* 377 U.S. 252, 12 L. Ed. 2d 280, 84 S. Ct. 1253 (1964).

At this stage of the proceeding we are not called upon to decide whether plaintiff's claim is meritorious, but only to decide whether the superior court has jurisdiction to hear this matter, *i.e.,* whether dismissal of plaintiff's claim against IBEW was proper. *See Metropolitan Paving Co. v. International Union of Operating Eng'rs,* 439 F.2d 300, 303 (10th Cir. 1971). Plaintiff's allegation that IBEW initially interfered with its contractual relationship arguably charges IBEW with inducing members of its union to refuse to perform services in violation of 29 U.S.C.A. § 158(b)(4). We hold, therefore, that under the above-quoted section, by alleging the tort of unlawful interference with his business, plaintiff has at least pleaded a cause of action pursuant to 29 U.S.C.A. § 187 (*see Metropolitan Paving Co. v. International Union of Operating Eng'rs, supra*), and is not preempted by *Garmon* and *Lockridge.* *Cf. Vaca v. Sipes,* 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903, 911 (1967).

The order dismissing plaintiff's complaint against the PUD and the order granting IBEW's motion to dismiss are reversed. The case is remanded for trial.

GREEN and EDGERTON, JJ., concur.

Petitions for rehearing denied January 17, 1973.

Review granted by Supreme Court March 6, 1973.