Donald BESETTE, Individually and as
next friend on behalf of Christine
Besette, Plaintiff and Appellant,

v.

ENDERLIN SCHOOL DISTRICT No. 22,
Defendant and Appellee.

Civ. No. 9680.

Supreme Court of North Dakota.

Jan. 24, 1980.

Rehearing Denied Feb. 14, 1980.

68

Tenneson, Serkland, Lundberg, Erickson, Leclerc & Marcil, Fargo, and Stetson, Jones & Streich, Lisbon, for plaintiff and appellant; appearances by Wayne P. Jones, Lisbon and Jack G. Marcil, Fargo; argued by Mr. Marcil.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Carlton J. Hunke, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by Donald Besette, individually and as next friend on behalf of Christine Besette, from the order of the Ransom County District Court granting summary judgment to Enderlin School District No. 22 and dismissing Besette's complaint for failure to file a claim within 90 days against the school district under the provisions of Subsection 1, Section 4, Chapter 295, 1975 North Dakota Session Laws (hereinafter Subsection 1). We affirm in part, reverse in part, and remand for further proceedings.

On April 20, 1976, Christine Besette sustained injuries when she fell off a slide while playing on the school grounds at Alice, North Dakota, during a class recess. At the time of this incident Christine was six years old and a student in the first grade. Connie Kracht, a teacher's aide employed by the school district, was supervising the playground at the time of this incident, and she saw Christine fall off the slide. Mrs. Kracht could see that Christine's arm was "hanging" and concluded that it was probably broken. She assisted Christine into the school building and together with two other teachers placed a towel sling on the arm and contacted Christine's mother. Mrs. Bueling, an employee of the school district, then took Christine to the doctor in Enderlin.

According to the affidavit of Wayne P. Jones, one of Besette's attorneys in this case, Mr. Ron Reierson, the principal of the Enderlin School District, contacted Christine's mother by telephone about the status of Christine's injury while Christine was an inpatient at a Fargo Hospital. During their conversation Mr. Reierson advised Christine's mother that the school district would be paying part of the cost of the hospital and doctor bills. Within 90 days of the incident the Besette's presented medical bills incurred as a result of Christine's injury to Mr. Reierson, including a diagnosis signed by a medical doctor, for submission to the school district's group accident and health insurance carrier.

Douglas R. Oglesby, superintendent of the Enderlin School District, was also informed within 90 days of the injury that a student had fallen from a slide and had possibly suffered a broken arm.

Besette filed this action for damages against the school district on October 12, 1977, and on that same day also gave notice of claim to the school district. The school district moved for summary judgment on the ground that Besette had failed to file a

claim within 90 days as required by Subsection 1. Subsections 1 and 2 of Section 4, Chapter 295, 1975 North Dakota Session Laws provide as follows:[1] .

"Section 4. NOTICE—STATUTE OF LIMITATIONS.

1. *Except as otherwise provided, any claim against a political subdivision for injuries alleged to have arisen under the provisions of this Act shall be filed, within ninety days after the alleged occurrence of such injury, in the office of the county auditor. Such claim shall be signed and verified by the claimant and shall describe the time, place, cause, and extent of the damage or injury, shall contain an abstract of the facts upon which the claim is based, and shall specify the amount of damages claimed therefor.* If it shall appear by the affidavit of a reputable physician that the injured person was rendered, by the injury complained of, mentally incapable of making the claim within the time specified in this section, the claim may be filed, if the claimant survives, within ninety days after the claimant becomes competent to make the same. The affidavit of the physician shall be prima facie evidence of mental incapacity, and may be controverted on the trial of an action for such damages. If the injured person shall die within ninety days after the happening of the injury, or before he shall become mentally competent to make the claim, the claim may be made within ninety days after the death of the injured person by any person having knowledge of the facts, and the person making such claim shall set forth therein specifically the facts relating to the injury of which he has personal knowledge and shall verify such facts positively. The facts of which the person making the claim has no personal knowledge shall be verified to

the best of his knowledge, information, and belief. *Notice of such claim shall also be given by the claimant to the political subdivision concerned and to the attorney general within ten days of filing such claim with the county auditor.*

2. An action brought under this Act must be commenced within three years after the cause of action has accrued." [Emphasis added.]

The district court granted the school district's motion for summary judgment and dismissed Besette's action for failure to file a claim within 90 days. Besette now appeals to this Court from the decision of the district court and raises the following three issues:

1. Whether or not actual notice satisfies the claim filing requirement of Subsection 1;

2. Whether the claim filing requirement of Subsection 1 is mandatory or directory;

3. Whether or not a minor must comply with the claim filing requirement of Subsection 1.

■ Besette does not dispute the fact that no written claim was filed with the county auditor within 90 days from Christine's incident. Besette does assert, however, that the school district had actual notice of the incident, and he contends that the legislative purpose of Chapter 295, to inform political subdivisions of a potential liability in order that the matter may be promptly investigated, was accomplished by the school district's actual notice of the incident. Besette asserts that under such circumstances an action should not be dismissed for a technical failure to file a written claim within 90 days under Subsection 1. The school district asserts the contrary position that actual notice of an incident does not constitute the filing of a claim and that failure to file a verified claim including the items of information specifically re-

---

1. By its own terms, Chapter 295 only remained in effect from the date of its approval, April 8, 1975, through June 30, 1977. Chapter 32–12.1, N.D.C.C., Liability of Political Subdivisions, currently contains no provisions similar to Subsection 1.

quired by Subsection 1, within 90 days, precludes the right to bring an action against the political subdivision involved.

With regard to this issue the overwhelming majority view is that actual notice of an incident does not satisfy a statutory requirement for presenting a written notice or claim to a governmental body and that the failure to present the required written notice or claim precludes the right to commence an action against the governmental body involved. *Batchelder v. Haxby*, 337 N.E.2d 887 (Ind.App.1975); *Shearer v. Perry Community Sch. Dist.*, 236 N.W.2d 688 (Iowa 1975); *Scarborough v. Granite School District*, 531 P.2d 480 (Utah 1975); *Schaefer v. Mayor and Council of City of Athens*, 120 Ga.App. 301, 170 S.E.2d 339 (1969); *Cochran v. City of Sumter*, 242 S.C. 382, 131 S.E.2d 153 (1963); *Stuart v. East Valley Consolidated Sch. Dist. No. 361*, 61 Wash.2d 571, 379 P.2d 369 (1963); *Allen v. Los Angeles City Board of Education*, 173 Cal.App.2d 126, 343 P.2d 170 (Ct.App.1959); *See* Annot., 65 A.L.R.2d 1278, 1297 (1959).

The courts have generally followed one or both of the following two rationales in support of the majority position: (1) that the right to sue a political subdivision is solely a statutory right which requires strict compliance with any legislative prerequisites; and (2) that the express statutory requirement of a "written" notice or claim is not satisfied by anything less than presentment of such written notice or claim.

Only two jurisdictions, Minnesota and New York, have held that actual notice of an incident may satisfy a statutory requirement for presenting a written notice or claim to a governmental body. *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979); *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975); *Matey v. Bethlehem Central School Dist., Delmar*, 89 Misc.2d 390, 391 N.Y.S.2d 357 (Sup.Ct.1977).

The New York decisions are not particularly relevant, however, because the New York statute requiring notice of claim within 90 days includes a provision, unlike Chapter 295, 1975 North Dakota Session Laws, expressly allowing the court, in its discretion, to extend the time for serving a notice of claim under certain circumstances including those in which the public body "acquired actual knowledge of the essential facts constituting the claim    . . . ." *Matey v. Bethlehem Central School Dist., Delmar*, 89 Misc.2d 390, 391 N.Y.S.2d 357, 359 (Sup.Ct.1977).

The applicable Minnesota statute requires that a written notice of claim against a municipality shall be presented within 180 days of the alleged injury, although during the period relevant in *Kelly* the statute required that such notice be given within 30 days.[2] In *Kelly* a minor sustained injuries in a diving accident at a pool owned and operated by the city of Rochester. Although a claim for damages was not presented to the city within the statutorily required 30-day period one of the lifeguards present at the time of the incident, who was employed by the city, prepared a report of the incident and filed it with the head of the recreation department. The injured claimant asserted that the actual notice of the incident acquired by the municipal employees satisfied the statutory notice requirement. The Minnesota Supreme Court agreed with that assertion and held that actual notice of a possible claim was sufficient to meet the requirements of the statutory notice provision. In so holding the Court stated:

> "While this notice of the injury is not proof that Brian or his father was making a claim, it nevertheless indicates that the city was alerted to make whatever investigation it needed to in order to defend itself in a possible suit, which is supposed to be the reason for requiring adherence to the notice requirement in the first place.

\*    \*    \*    \*    \*    \*

2. See *Kossak v. Stalling*, 277 N.W.2d 30, 32 (Minn.1979) for relevant provisions of Minnesota's notice statute, Minn.St. § 466.05.

". . . we hold that in the absence of a showing of prejudice, actual notice on the part of the municipality or its responsible officials of sufficient facts to reasonably put the governing body of the municipality on notice of a possible claim will be in compliance with the notice requirements of Minn.St.1971, § 466.05, subd. 1. Our holding today does no more than follow the trend of our recent opinions in recognizing the arbitrariness of the notice provision and in an attempt to remedy this injustice, we declare that substantial compliance is accomplished by actual notice on the part of the municipality even if such knowledge is acquired through its own procedures or personnel." *Kelly v. City of Rochester*, 304 Minn. at 332–33; 231 N.W.2d at 277–78.

In view of the express language of Subsection 1, requiring that "any claim . . shall be filed, within ninety days after the alleged occurrence . . . . Such claim shall be signed and verified by the claimant . . ." we must reject the reasoning of the Minnesota Supreme Court and adopt the majority position that actual notice of an incident is insufficient to satisfy the requirement of a written notice or claim.

In the case of *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974) this Court abolished governmental immunity for political subdivisions but gave its decision prospective application to actions arising 15 days after adjournment of the Forty-fourth Legislative Assembly. This Court's purpose in delaying the effect of its decision was to allow the legislature an opportunity to adopt such legislation as it deemed advisable to mitigate any hardships arising from the Court's abolishment of the long existing shield of governmental immunity.

The legislature responded with the enactment of Chapter 295, 1975 North Dakota Session Laws, and expressed its intent therein that such act was to provide the political subdivisions with temporary protection until July 1, 1977. As part of that protection the legislature enacted Subsection 1 requiring a written claim to be filed against a political subdivision within 90 days after the alleged occurrence. For us to conclude that actual notice of an injury by employees of a political subdivision satisfies the claim filing requirement, we would have to ignore the express language requiring a signed and verified claim. Such a strained interpretation of Subsection 1 would also contravene the express intent of the legislature to provide a temporary protection to the political subdivisions from the harsh effects of our decision abolishing governmental immunity.

In the case of *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979), this Court adopted the following reasoning of the Colorado Supreme Court regarding the legitimate state interests furthered by statutory notice or claim filing requirements:

" 'Those interests include fostering prompt investigation while the evidence is still fresh; repair of any dangerous condition; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability. In addition, in light of the numbers of public entities, the notice requirement . . . is a certain means by which the state or its subdivisions may be alerted to potential liability arising from a governmental activity.' " *Herman v. Magnuson*, 277 N.W.2d at 453–54 quoting from *Fritz v. Regents of University of Colorado*, 586 P.2d 23, 25 (Colo.1978).

Actual notice of an incident does not satisfy the foregoing objectives which are applicable to the Subsection 1 claim filing requirement. Knowledge that a child has sustained an injury on a playground does not inform the school district of any allegation of negligence or other wrongdoing, and such knowledge does not inform the school district that a claim for damages will be sought against the district. Furthermore, actual notice of an injury in the absence of a timely filed claim does not alert the political subdivision to a potential liability nor is a prompt and amicable settlement encouraged thereby.

We hold that actual notice of an incident or injury by a political subdivision employee does not satisfy the claim filing requirement of Subsection 1.

As his second issue Besette asserts that the 90-day claim filing requirement of Subsection 1 is not mandatory but is directory only and that such requirement is not a necessary prerequisite to bringing an action against a political subdivision. We disagree.

A statute must be construed, if possible, to give meaning and effect to every word, clause, and sentence of the statute. *In re D.S.*, 263 N.W.2d 114 (N.D.1978). Subsection 1 provides that a signed and verified claim "shall" be filed within 90 days in the office of the county auditor. The only construction that gives the foregoing provision any meaning is that the word "shall" is mandatory whereby the failure to file the claim precludes bringing an action against a political subdivision. To interpret "shall" as being only directory would allow one to sue a political subdivision without attempting to comply whatsoever with the claim filing requirement. Such an interpretation would render the claim filing provision meaningless and without effect.

The legislature expressed its intent under Section 13 of Chapter 295, 1975 North Dakota Session Laws, to provide the political subdivisions with temporary protection from the abolition of governmental immunity. It is commensurate with that express intent to interpret the word "shall" in Subsection 1 to be mandatory whereby the filing of a claim is a necessary prerequisite to bringing an action against a political subdivision.

Section 40–42–02, N.D.C.C. , expressly prohibits an action against a municipality unless a claim has been filed within 90 days as required by Section 40–42–01, N.D.C.C. Because Subsection 1 contains no such express language stating that an action against a political subdivision is prohibited unless a claim is filed Besette asserts that the claim filing requirement of Subsection 1 is merely permissive or directory rather than mandatory. We disagree. The language of Section 40–42–02, N.D.C.C., which expressly prohibits an action to be brought against a city unless a claim has been filed under Section 40–42–01, N.D.C.C., clarifies

the legislature's intent and removes any doubts that the Section 40–42–01, N.D.C.C., claim filing requirement is a prerequisite to bringing an action. Nevertheless, express language such as that of Section 40–42–02, N.D.C.C., is unnecessary to ascertain the clear intent of the legislature to make the claim filing requirement of Subsection 1 a necessary prerequisite to bringing an action against a political subdivision. The specific statement that no action can be maintained unless a claim has been filed is not necessary to make the filing of such claim a necessary prerequisite to the commencement of an action.

In 1931, the California Legislature enacted a law which provided that under certain specified situations a claim for damages "shall" be filed with a municipality within 90 days after the occurrence of the accident. That statute also contained *no* express provision making the filing of such claim a condition precedent to the commencement of an action. In the case of *Norton v. City of Pomona*, 5 Cal.2d 54, 64, 53 P.2d 952, 956 (1935), it was asserted that the filing of a claim was not a necessary prerequisite to bringing an action. The California Supreme Court disagreed and stated as follows:

"To hold that it is not essential to file a claim in accordance with this statute before bringing suit would have the effect of rendering the statute nugatory, a meaningless and purposeless legislative gesture, permitting a claimant to file a claim only if he chose to do so. This conclusion finds convincing support in the decision of *Bancroft v. City of San Diego*, 120 Cal. 432, 52 P. 712, 714, wherein the charter of the city in question provided that 'all claims for damages against the city must be presented to the common council and filed with the clerk within six months after the occurrence from which the damages arose.' In deciding the case the court said: 'But it is argued the charter does not say that no action shall be brought unless the claim is so presented, nor is there a limitation as to the right to sue. To hold that the city may be sued

upon such demand after the expiration of six months, and without having presented the same, would be to hold that, notwithstanding the charter, such demand need not be presented. I can imagine no motive for the requirement unless a failure to so present the demand is fatal. If the law had read, "Claims must be presented within six months, but a failure to so present them shall not affect their validity," we should have been at a loss to understand the purpose of the law. It would have been a self-professed absurdity. I think the implication that a failure to present a claim is fatal to it is as plain as would have been an express declaration to that effect'." 53 P.2d at 956–57.

The California Supreme Court held in *Norton* that the plaintiffs' failure to file their claim barred a recovery of damages against the municipality. We follow the foregoing rationale of the California Supreme Court in our interpretation of Subsection 1.

Accordingly, we hold that the claim filing requirement of Subsection 1 is mandatory and that the failure to file a claim as required by that provision precludes the right to bring an action against a political subdivision.

The last issue Besette has raised on this appeal is whether or not a minor should be required to comply with the 90-day claim filing requirement of Subsection 1.

There is a split of authority as to whether or not a minor must comply with a statutory notice or claim filing requirement. A number of courts have held that a minor must file a statutory notice or claim within the specified time period. *Shearer v. Perry Community Sch. Dist.*, 236 N.W.2d 688 (Iowa 1975); *Fry v. Willamalane Park and Recreation District*, 4 Or.App. 575, 481 P.2d 648 (1971); *Ocampo v. City of Racine*, 28 Wis.2d 506, 137 N.W.2d 477 (1965); *Allen v. Los Angeles City Board of Education*, 173 Cal.App.2d 126, 343 P.2d 170 (1959); *Galloway v. City of Winchester*, 299 Ky. 87, 184 S.W.2d 890 (1944); *City of Birmingham v.*

*Weston*, 233 Ala. 563, 172 So. 643 (1937); *Peoples v. City of Valparaiso*, 178 Ind. 673, 100 N.E. 70 (1912). Some courts have held to the contrary that minors are excused from compliance with such statutory notice or claim filing requirements because they are legally incapacitated. *Hunter v. North Mason High School*, 12 Wash.App. 304, 529 P.2d 898 (1974), *aff'd*, 85 Wash.2d 810, 539 P.2d 845 (1975)[3]; *McCrary v. City of Odessa*, 482 S.W.2d 151 (Tex.1972); *Lazich v. Belanger*, 111 Mont. 48, 105 P.2d 738 (1940); *McDonald v. City of Spring Valley*, 285 Ill. 52, 120 N.E. 476 (1918).

The constitutional aspects of this issue have also been considered. Some courts have held that statutory notice or claim requirements are unconstitutional when applied to minors. *Hunter v. North Mason High School*, 12 Wash.App. 304, 529 P.2d 898 (1974), *aff'd*, 85 Wash.2d 810, 539 P.2d 845 (1975); *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (1973), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Reich v. State Highway Department*, 386 Mich. 617, 194 N.W.2d 700 (1972); while other courts have held that such statutes do not violate a minor's constitutional rights. *Fry v. Willamalane Park and Recreation District*, 4 Or.App. 575, 481 P.2d 648 (1971); *Ocampo v. City of Racine*, 28 Wis.2d 506, 137 N.W.2d 477 (1965).

Section 28–01–25, N.D.C.C., is relevant to this issue in our state, and it provides in pertinent part as follows:

"28–01–25. *Disabilities extend limitations on actions generally—Exceptions.* —If a person who is entitled to bring an action . . . is:

1. Under the age of eighteen years;

. . .

at the time the cause of action accrues, the time of such disability is not a part of the time limited for the commencement of the action. . . ."

Besette asserts that Section 28–01–25, N.D. C.C., should apply to extend the time within which a minor must file a claim under Sub-

---

**3.** The appellate court's decision was affirmed by the Washington Supreme Court on the ground that the claim filing statute violated the equal protection rights of persons with claims against the government.

section 1 to 90 days after the minor reaches the age of 18 years. We agree.

This issue has been raised in several jurisdictions which have statutes similar to Section 28–01–25, N.D.C.C., which extend the time period within which a minor can bring an action. In those jurisdictions there is a split of authority whether or not such a time-extending statute applies to extend the time within which a minor must file a notice or claim under a provision similar to Subsection 1.

A number of courts have held that such a notice or claim filing requirement is a condition precedent to maintaining an action against a political subdivision rather than a statute of limitation and that the time within which a minor must comply with such requirement is not, therefore, extended by a statute which extends the time within which a minor can bring an action. *Fry v. Willamalane Park and Recreation District*, 4 Or.App. 575, 481 P.2d 648 (1971); *Galloway v. City of Winchester*, 299 Ky. 87, 184 S.W.2d 890 (1944); *City of Birmingham v. Weston*, 233 Ala. 563, 172 So. 643 (1937). In all of such jurisdictions the right to sue a political subdivision is considered a statutory right only, and the courts in those jurisdictions have stated that whenever a legislature creates a cause of action it can impose upon both adults and minors whatever conditions precedent it deems appropriate.

At least four courts have concluded that a statute extending the time within which a minor can bring an action also applies to extend the time within which the minor must file a notice or claim. *Scott v. School Board of Granite School Dist.*, 568 P.2d 746 (Utah 1977); *Hunter v. North Mason High School*, 12 Wash.App. 304, 529 P.2d 898 (1974), aff'd, 85 Wash.2d 810, 539 P.2d 845 (1975); *City of Houston v. Bergstrom*, 468 S.W.2d 588 (Tex.Civ.App.1971); *City of Barnesville v. Powell*, 124 Ga.App. 132, 183 S.E.2d 55 (1971). Regarding this issue the Texas Court of Civil Appeals made the following statement in *Bergstrom* :

"The purpose of the charter provisions by many of the home rule cities in the State of Texas requiring a specified timely no-tice as a condition to the city's liability for damages for personal injuries, whether they be considered statutes of limitations or not, is similar in nature—to permit the city to investigate the basis of the claim while the facts are fresh. *City of Abilene v. Fillmon*, Tex.Civ.App., 342 S.W.2d 227, ref., n. r. e. Insofar as the limitation statutes are concerned, the Legislature has expressed the public policy of this State in Articles 5518 and 5535, V.A.T.S. Those statutes, generally, provide that the time during which a claimant is under disability such as that of minority, shall not be deemed a portion of the time limited for the commencement of an action on his claim. It seems reasonable that such policy should apply to the time limit fixed for giving a city a notice of a claim against it." 468 S.W.2d at 590.

The Georgia Court of Appeals in *City of Atlanta v. Barrett*, 102 Ga.App. 469, 116 S.E.2d 654 (1960), held that a statute (similar to Subsection 1) which required a written claim to be presented to a municipality within six months was a statute of limitations and was subject to the general laws tolling statutes of limitations. In so holding, the Georgia Court of Appeals stated:

"A statute of limitations is any law which fixes the time within which parties must take judicial action to enforce rights or else be thereafter barred from enforcing them. *Prudential Insurance Co. v. Sailors*, 69 Ga.App. 628(4), 26 S.E.2d 557. While the giving of the notice is a condition precedent to the bringing of an action, the giving of such notice is at once part and parcel of the enforcement of the right and it is an inseparable part of the bringing of the action. . . . We, therefore, conclude that the requirement that the notice be given within six months from the date of the injuries or else that the action therefor be forever barred is itself a statute of limitations and subject to the geneal [general] law of this State with respect to the tolling of statutes of limitations." 116 S.E.2d at 657.

■■ In North Dakota the right to sue a political subdivision is not a creation of statute; rather, such right has its basis in common law tort by virtue of this Court's abolition of governmental immunity in *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974). With respect to the Chapter 40–42, N.D.C.C., requirement for filing certain claims against municipalities this Court stated in *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979):

"Following the rationale of *Kitto*, however, Herman's right of action was not created by the Legislature but rather has been limited by the Legislature pursuant to Chapter 40–42, N.D.C.C." 277 N.W.2d at 451.

So too, the right to bring an action against a political subdivision exists independent of the provisions of Chapter 295, 1975 North Dakota Session Laws. Such legislation does not create the right to bring an action against a political subdivision but rather it places certain limitations upon such right. Thus, the 90-day claim filing requirement of Subsection 1 is not a condition precedent to being entitled to bring an action against a political subdivision; rather, it is a limitation upon that right. By virtue of Subdivision 1 the failure to file a claim within 90 days precludes one from bringing an action. Consequently, such provision has the same effect as any other statute of limitation irrespective of whether or not one wishes to delineate it as a statute of limitation.

■ Section 28–01–25, N.D.C.C., provides that if a person who is entitled to bring an action is under 18 years old when the action accrues the period of his minority is not part of the time limited for the commencement of the action. We conclude that Section 28–01–25, N.D.C.C., operates to extend the time within which a minor must file a claim under Subsection 1 to 90 days after the minor reaches the age of 18 years. Consequently, we hold that Christine Besette's action against the Enderlin School District was not barred by her failure to file a claim within 90 days after her injury occurred.

We believe that this holding is consistent with the intent expressed by the legislature in Subsection 1 of protecting the rights of one made mentally incapable, through injuries suffered, of filing a claim. In a *sense*, a minor, especially a very young child, such as the six-year-old in this case, would be mentally incapable of filing a claim on its own behalf; true, not because of the injuries suffered, but because of such a minor's peculiar mental incapacity. Through the retention of Section 28–01–25, N.D.C.C., without amendment thereto, the Legislature has expressed its apparent belief that it would not be just to deprive a minor of access to our courts merely because its parents failed to comply with the notice requirements of Subsection 1.

Section 28–01–25, N.D.C.C., does not operate to extend the time period within which Donald Besette, Christine's father, was required to file his claim against the school district. Accordingly, we hold that the district court properly dismissed Donald Besette's individual action with respect to those damages sought on his own behalf.

Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

PAULSON, J., concurs.

SAND, Justice (concurring specially).

I concur in the result.

In my opinion, actual notice as defined in § 1–01–23, NDCC, satisfies the notice requirement of subsection (1) of § 4, Ch. 295 of the 1975 Session Laws, which is set out in the majority opinion. The notice requirement set out in subsection (1) is not a statute of limitations provision limiting the time within which an action may be brought but rather can be characterized as a condition precedent. The true statute of limitation specifying the time within which an action may be brought is found in subsection (2) which provides:

"An action brought under this Act [Ch. 295, 1975 S.L.] must be commenced within three years after the cause of action has accrued."

Even this limitation in itself can or could have created a problem because the Act expired on its own on 30 June 1977, whereas an action may be brought within three years which could be some time after the Act expired on its own. A further issue could arise whether the fund created by § 3 went out of existence on the expiration date of the Act or continued if an action had been brought. We, however, do not need to resolve these issues.

I view a condition precedent as found in subsection (4) not as a statute of limitations but as a means of compelling notice to be given to the political subdivision. The object of the notice is to give the political subdivision an opportunity to begin investigations, arrange for defense counsel, etc. In my opinion, actual notice accomplishes this and is sufficient to apprise the political subdivision of the nature of the claim which may be filed against it. My opinion in this respect, that actual notice is sufficient, is supported by the fact that the county auditor under the Act is not required to give notice to the political subdivision. Also, should the county auditor fail to inform the political subdivision, I do not believe that the political subdivision could challenge an action on the ground that it had not received notice of the claim from the county auditor [1] prior to the bringing of the action. This fact also makes a good argument that the notice requirement should be treated as directory rather than mandatory, but even treated as mandatory, actual notice constitutes notice for purposes of subsection (1) of § 4, Ch. 295.

I would rely upon *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979), *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975); and *Matey v. Bethlehem Central School District*, 89 Misc.2d 390, 391 N.Y.S.2d 357 (S.Ct.1977), that actual notice satisfies the notice requirement of subsection 1 of § 4 of Ch. 295, 1975 S.L.

The facts in this case are not in dispute on the question whether or not the school district had actual notice of the incident.

The school principal, as pointed out in the majority opinion, was aware of the injury and had discussed it with the child's mother, and even informed her that the district would be paying part of the cost of the hospital and doctor bills. Contents of the medical bills resulting from Christine's injury were presented to the principal of the school district. Therefore, the action on behalf of Christine Besette is timely and should not have been dismissed.

As to the claim and action of Donald Besette, the school district had no such actual notice. Consequently, Donald Besette may not take advantage of § 1–01–23, NDCC, in that there was no actual notice. Furthermore, the claim of Donald Besette is of a different nature and unless a specific amount is stated and conveyed to the party deemed liable, in this instance the school district, would have no knowledge of what the claim may be or how much, or anything of that nature.

I do not believe that *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), has any legal significance to the resolution of the issues involved here. If anything at all, it has only historical significance as to why the Legislature enacted Ch. 295.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached by the majority. However, I would have held that under the facts of this case the actual notice received by the school district was substantial compliance with the requirements of subsection 1 of Section 4 of Chapter 295 of the 1975 Session Laws.

PEDERSON, Justice, dissenting.

In *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), this court said that it was giving the Forty-fourth Legislative Assembly an opportunity to "mitigate any hardships" arising from the abolition of governmental immunity for subdivisions. The Legislative Assembly, in enacting

1. The Act also states that the claimant shall give notice to the political subdivision and to the Attorney General within ten days of filing such claim with the county auditor.

Chapter 295, S.L.1975, said: "It is the intent of the legislature that this Act is to provide the political subdivisions of this state with temporary protection . . . ," and accordingly required, among other things, that notice of claim be filed within 90 days after an injury, and suit be brought within three years. Whether common law, this court, or Chapter 295 created a cause of action against political subdivisions is academic only. The Legislature was clear and unambiguous, and left no room for exceptions for anyone not incapacitated by the injury complained of.

I disagree with the interpretation placed upon § 28–01–25, NDCC, by the majority. The majority opinion, in effect, without so stating, overrules a long-standing principle in this state. In a case involving claims against the state bonding fund under a statute that required a 60-day notice in addition to a statute of limitation applicable to suit, this court said:

> "The statute we are considering is a complete act in itself. It does not make any exceptions; it is clear and unambiguous, and it applies to those under disability as well as to those who are not." *Miller v. Turner*, 64 N.D. 463, 253 N.W. 437, 441 (1934).

See also, *Morton County v. Tavis*, 66 N.W.2d 201, 205 (N.D.1954). The analogy is obvious. See cases cited in 56 Am.Jur.2d, Municipal Corporations, Etc., § 783, and 34 A.L.R.2d 739.

In a very early case, *Morgan v. City of Des Moines*, 60 F. 208, 210 (8th Cir. 1894), involving a claim against the city where notice of claim had not been served within the 90 days required by the statute, the court said:

> ". . . the argument against the justice and wisdom of the statute which contains no saving clause in favor of infants must be addressed to the legislature, and not to the courts."

Subsequently, in *Schauble v. Schulz*, 137 F. 389 (8th Cir. 1905), a case involving North Dakota law, the court said that the exemption for infants does not rest upon any fundamental doctrine of law, but upon express provision therefor in the statute. It is competent for the Legislature to put infants and adults upon the same basis— and this is the effect of a statute containing no saving clause exempting infants. See 54 C.J.S. Limitations of Actions § 235.

The fact that an infant is exempt from the provisions of a general limitations statute does not permit him to ignore the notice requirements of a statute establishing a time limit for notice of a claim against a political subdivision.

Harsh as it may appear to be, the judgment should be affirmed. Hard cases are apt to make bad law.